**Thelma D. HOGG, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.**

No. 92–5320.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 17, 1992.

Decided Jan. 15, 1993[*].

---

[*] This decision was originally issued as an "unpublished decision" filed on January 15, 1993.

D.C. Daniel, Jr. (argued and briefed), Daniel, Burton & Thomas, Murfreesboro, TN, for plaintiff-appellant.

Michael L. Roden, Asst. U.S. Atty., Ernest W. Williams, U.S. Atty., Nashville, TN, Cynthia D. Marino (argued and briefed), Dept. of Health and Human Services, Office of the Gen. Counsel, Baltimore, MD, for defendant-appellee.

Before: KEITH and JONES, Circuit Judges; and JOINER, Senior District Judge.**

PER CURIAM.

Plaintiff–Appellant Thelma D. Hogg appeals the district court's grant of summary judgment affirming the Health and Human Services Secretary's denial of her application for social security disability benefits. For the reasons stated, we affirm.

### I.

Hogg filed applications for a period of disability, disability insurance benefits and supplemental security income in 1989. The applications were denied. She then requested a hearing before an administrative law judge ("ALJ"). The ALJ conducted a hearing on July 23, 1990. The evidence presented to the ALJ included the following:

Hogg was born on March 12, 1935. She had seven years of formal education and obtained a GED. Her past work experience included being a sewing machine operator from 1957 to 1982 and a sales clerk. As a sewing machine operator, she used a foot pedal and lifted bundles weighing 2 to 40 pounds. Hogg stated that she left this job because she had high blood pressure and felt nervous.

Hogg stated that she had been taking Inderal (used to combat hypertension) for 15 years, and that she took Pronocal, Tagamet, and Cartasan. She stated that she did not always take the medication as it was prescribed. Hogg testified that she drove to vocational training every day, shopped, prepared meals, did laundry, and cared for her teenage son. Additionally, Hogg stated on a disability report that she enjoyed crocheting and reading, attended church three times a week, and visited with family two or three times a week.

---

On February 16, 1993, the court designated the opinion as one recommended for full-text publication.

** Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

Hogg's brother, David Lackey, testified that he took Hogg's blood pressure on occasion. He stated that her pressure was sometimes as high as 200. Lackey testified that he sometimes called an ambulance to take Hogg to the hospital because her blood pressure was so high.

Hogg alleged entitlement to benefits based on various somatic complaints including heart palpitations, stomach problems, a hernia, high blood pressure, and nerves. Hogg alleged a disability onset date of June 2, 1984. After the onset date, Hogg worked for one week as a salesperson and four days as a floor assistant at Walmart in October 1986.

Hogg had been treated by numerous physicians. In 1976, Hogg was hospitalized for chest pain. From February 20, 1976 to February 19, 1982, Hogg was treated by Dr. Louis Voessel, MD, for complaints of stomach pain, intestinal pain, heart palpitations, and breathing problems. She was treated by Dr. Philip Bertram, MD, on February 6, 1987 for heartburn, excessive gas, and poor emptying of food from the stomach. Dr. Bertram noted that she improved with medication and that he expected that her physical problems would place no restrictions on her ability to sit, stand, lift or carry. Subsequently, Dr. Bertram noted that Hogg should avoid prolonged bending, lifting, or standing due to her heartburn.

Several physicians assessed Hogg's ability to perform work-related activities. Dr. Bertram completed a medical assessment of Hogg's ability to perform work-related activities on March 6, 1989. Dr. Bertram noted that Hogg could lift ten to twenty pounds, stand at least two hours of an eight-hour workday, and sit at least six hours. Similarly, on March 6, 1989, Dr. Crowe, MD, an examining physician, completed a medical assessment of Hogg's ability to do work-related activities, wherein he stated that she had no impairment-related physical limitations.

Additionally, Dr. P.K. Jain, MD, another examining physician, completed a medical assessment of Hogg's ability to perform work-related activities on March 6, 1989, wherein he stated that she had no impairment-related physical limitations. Dr. Jain noted on October 12, 1989, that Hogg could lift no more than ten pounds occasionally, stand no more than two hours, and sit no more than six hours. He attributed these limitations to hypertension, anxiety, and depression. Dr. Voessel, who treated Hogg from 1976 to 1982, believed that none of her conditions were severe enough to cause permanent disability. Finally, on June 4, 1990, Dr. James Sullivan, MD, another examining physician, stated that he was unable to find "anything at all the matter" with Hogg. Tr. at 461.

Hogg also underwent treatment for depression and anxiety. On August 16, 1985, Hogg underwent a consultative psychological evaluation by Thomas L. Pettigrew, MA, and Dr. Elliott Ward, PhD. Psychological tests showed that Hogg suffered mild to moderate anxiety and depression, dependent personality traits, and passivity. The examiners concluded that Hogg probably would not function well in vocational settings which required independence, initiative, and minimal supervision. The examiners noted that production quotas and responsibilities would evoke anxiety. The examiners also noted, however, that Hogg's cooperation and effort throughout the testing were excellent. They opined that Hogg would make a very good "follower" because she was motivated by pleasing others. They also felt that she would benefit from vocational evaluation and that her anxiety and depression were likely to abate with counseling.

Hogg was treated for her depression by Dr. Kenneth B. Carpenter, MD. Dr. Carpenter reported on October 18, 1985 that Hogg appeared to have an obsessive personality with depressive features, but that her prognosis was good. On March 24, 1986, Dr. Carpenter noted that Hogg's condition was unchanged, and that she seemed

to have little motivation to improve her situation. However, Dr. Carpenter noted that Hogg showed improvement in May 1986, although he was not satisfied with the extent of improvement. On February 19, 1987, Dr. Carpenter completed a medical assessment of Hogg's work-related abilities, stating that "if she could find a light duty job she might be able to handle it well." *Id.* at 260.

After his evaluation in 1987, Dr. Carpenter assessed Hogg's work-related abilities and concluded that she was not significantly limited in her ability to understand and remember, interact socially, or adapt. He noted that she was limited to some degree in her ability to concentrate due to easy fatigue and anticipation of physical problems.

On April 3, 1989, Dr. Carpenter noted that Hogg was a very gracious person who related well with others. He noted that she appeared to be able to follow directions and could handle light work. Similarly, on April 28, 1989, Dr. Carpenter observed that Hogg was able to relate to people adequately and maintain a schedule. He also observed that she appeared quite able to understand and remember instructions and procedures. He noted again that she was limited in her ability to concentrate because she fatigued easily.

Hogg was also treated for her anxiety by Nina B. Lunn, L.C.S.W. Ms. Lunn began treating Hogg on October 17, 1985 and saw her regularly for counseling. Ms. Lunn noted in May 1986 that the goal of counseling was employment. Ms. Lunn reported that Hogg experienced a setback in December 1986, but also stated at that time that Hogg would be able to handle the stress involved in some occupations.

Following the July 23, 1990 hearing, the ALJ, on August 29, 1990 found that Hogg was not entitled to a period of disability, disability insurance benefits, or supplemental security income. Hogg requested Appeals Council review; however, that review was denied on December 27, 1990. As a result, the ALJ decision became the final decision of the Secretary of Health and Human Services. The matter was then appealed to a federal district court, which, in turn, referred it to a magistrate judge. On November 8, 1991, in a report and recommendation, the magistrate judge found that the record contained substantial evidence upon which the ALJ could properly have made the determination that he made. The district court approved and adopted the magistrate judge's report and recommendation.

## II.

### A.

On appeal, Hogg argues that the Secretary's decision not to award benefits does not comport with the evidence.

"[T]he Secretary's findings 'are not to be overturned unless there is no substantial evidence supporting such conclusions.'" *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir.1988) (quoting *Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 535 (6th Cir.1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983)). "Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* "It is more than a mere scintilla, but only that much evidence required to prevent a directed verdict." *Id.* "This court 'may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility.'" *Id.* (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984)). "Rather, '[i]f the Secretary's findings are supported by substantial evidence then we must affirm the Secretary's decision even though as triers of fact we might have arrived at a different result.'" *Id.* (quoting *Elkins v. Secretary of Health & Human Services*, 658 F.2d 437, 439 (6th Cir.1981)).

Federal regulations provide steps for evaluating a disability. 20 C.F.R. §§ 404.-1520(a) and 416.920(a) (1992). A set order is followed to determine whether an individual is disabled. *Id.* If it is determined that a claimant is or is not disabled at any point in the review, further review is not necessary. *Id.* The sequence that the ALJ must consider is as follows:

1. an individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. an individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. if an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* 20 C.F.R. §§ 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. if an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. if an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

In addition, the regulations require that the ALJ follow a special procedure when evaluating the severity of mental impairments. 20 C.F.R. § 404.1520a (1992). This special procedure requires the ALJ to use a form to list the signs, symptoms and other medical findings which establish the existence of a mental impairment. These listings correspond to the paragraph A criteria for the various categories of mental disorders in 20 C.F.R. Pt. 404, Subpt. P, App. 1, and are known as the "A" criteria.

The special procedure also requires that the ALJ rate the degree of functional loss resulting from the documented mental impairment(s). 20 C.F.R. § 404.1520a(b)(3) (1992). There are four areas of functional loss which have been found especially relevant to the ability to work. They correspond to the paragraph B criteria of the various mental disorders listed in 20 § C.F.R. Pt. 404, Subpt. P, App. 1, and are known as the "B" criteria. The four areas are: activities of daily living; social functioning; concentration, persistence and pace; and deterioration or decompensation in work or work-like settings.

Hogg contends that she meets the requirements stated above, i.e., she contends that she has not worked since her onset date, she has a severe impairment, and her severe impairment meets the listing requirements of 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.07 (1992). As a result, Hogg argues that substantial evidence does not support the Secretary's decision to deny benefits.

## B.

■ Prior to applying the five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520, the ALJ found that Hogg met the disability insured status requirements on June 2, 1984, the date she stopped working and continued to meet them through December 31, 1989, but not thereafter.

In applying the five-step sequential evaluation process, the ALJ found that Hogg had not been engaged in substantial gainful activity since June 2, 1984. Therefore, Hogg satisfied the requirements of step one. Next, the ALJ found that the medical evidence established that Hogg had a severe impairment consisting of anxiety-depression, passive-dependent personality traits, hypertension controlled with medication, a history of hiatal hernia with esophagitis and gastritis. Therefore, Hogg satisfied step two. The ALJ then found that Hogg did not have an impairment or combination of impairments listed in, or medically equal to those listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ also found that Hogg had not experienced pain or any other symptoms of a disabling level of severity.

The ALJ determined that Hogg had the residual functional capacity to perform work-related activities except for work involving heavy lifting or strenuous manual

labor or the completion of highly skilled job tasks. The ALJ found that Hogg's past relevant work did not require the performance of work-related activities precluded by the above limitations. Therefore, the ALJ found that Hogg's impairments did not prevent her from performing her past relevant work and that Hogg was not under a disability.

There is substantial evidence to support the ALJ's finding that Hogg did not establish the level of severity required to be considered disabled under step three. While Hogg arguably met the criteria under A, she did not meet the B criteria.

The evidence tends to show that Hogg did not experience marked restrictions in activities in her daily living. She herself stated that she was able to care for herself and her son, and that she was able to maintain an active schedule of daily activities, including attending church and vocational training, visiting relatives, and driving herself. *See Young v. Secretary of Health & Human Services,* 925 F.2d 146, 150 (6th Cir.1990) (evidence that the claimant washed dishes, cooked, shopped, read, watched television, and drove amply supported the Secretary's findings that the claimant's daily activities were only slightly restricted and, therefore, that the claimant did not satisfy the B(1) criteria).

Additionally, the evidence shows that Hogg experienced some, but not marked difficulties in social functioning. She attended church and visited relatives. Moreover, her treating physician, Dr. Carpenter, reported on several occasions that she re-lated well toward others. Finally, while Hogg had some difficulty concentrating, her limitations were not of a persistence or pace resulting in frequent failure to complete tasks in a timely manner. Dr. Carpenter found that Hogg had no significant limitations in her ability to understand and remember, follow instructions and procedures, and maintain a schedule.

There is also substantial evidence to support the ALJ's decision that Hogg's impairments, while severe, did not prevent her from performing her past relevant work. Dr. Carpenter noted that if Hogg could find a light duty job, Hogg could handle it well. Additionally, Dr. Carpenter noted that Hogg had the ability to understand and remember, maintain a schedule, and follow instructions and procedures.

In addition, a couple of examining physicians opined that Hogg would be physically able to do certain work-related activities. Dr. Bertram noted that Hogg could lift ten to twenty pounds, stand at least two hours of an eight-hour workday, and sit at least six hours. Similarly, on March 6, 1989, Dr. Crowe, an examining physician, completed a medical assessment of Hogg's ability to do work-related activities, wherein he stated that she had no impairment-related physical limitations.

### III.

■ In addition to Hogg's substantial evidence argument, Hogg contends that she met the listing requirements of 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.07 (1992) (Somatoform Disorders),[1] and thus is enti-

---

**1.** In order to establish that a somatoform disorder reached the level of severity considered disabling under §§ 404.1520(d) and 416.920(d), step number three, Hogg must satisfy the requirements of both (A) and (B) of § 12.07. Section 12.07 states as follows:

12.07 *Somatoform Disorders:* Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A. Medically documented by evidence of one of the following:

1. A history of multiple physical symptoms of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly; or

2. Persistent nonorganic disturbance of one of the following:

a. Vision; or

b. Speech; or

c. Hearing; or

d. Use of a limb; or

e. Movement and its control (e.g., coordination disturbance, psychogenic seizures, akinesia, dyskinesia; or

f. Sensation (e.g., diminished or heightened).

3. Unrealistic interpretation of physical signs or sensations associated with the preoc-

tled to disability *per se.* She contends that the Secretary's decision is legally erroneous in failing to recognize that the appropriate listing is met. This argument is flawed because the Secretary's determination about whether Hogg met the requirements under § 12.07 is a factual determination which has been reviewed above.[2]

### IV.

For the foregoing reasons, the district court's grant of summary judgment for the Secretary is AFFIRMED.

cupation or belief that one has a serious disease or injury;
AND
B. Resulting in three of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behavior).

2. Hogg also argues that the district court erred by failing to address her objections to the magistrate judge's report and recommendations. As stated above, the district court adopted the magistrate's report, making it its own. This argument is without merit. *See Ivy v. Secretary of Health & Human Services,* 976 F.2d 288, 289–90 (6th Cir.1992).