103 F.3d 130
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James M. RICKARD, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,
Defendant-Appellee.
 No. 95-6524.
 United States Court of Appeals, Sixth Circuit.
 Nov. 27, 1996.
 
 Before: LIVELY, BOGGS, and NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 On October 7, 1987, a four-inch-thick slab of rock became dislodged from the ceiling of a coal mine. Unfortunately, James Rickard was situated directly beneath the slab, and the slab hit him in the middle of his back. He quit his job at the coal mine the following week, and subsequently filed an application for Social Security disability insurance benefits, claiming that he was disabled both by the physical injuries caused by his encounter with the slab of rock and by a psychological disorder. On September 19, 1989, Administrative Law Judge Gary Flenner rejected Rickard's application, finding that Rickard retained the capacity to perform unskilled light work. The district court upheld ALJ Flenner's findings, and Rickard appealed to this court. While that appeal was pending, the district court granted Rickard's motion for a remand to the Social Security Administration for the consideration of new evidence, and Rickard's application was assigned to a new Administrative Law Judge, Charles Marshall.[1] On April 14, 1993, ALJ Marshall denied the applications, again finding that Rickard retained the capacity to perform unskilled light or sedentary work. The district court dismissed Rickard's complaint, and this appeal followed. Because we agree with the district court that substantial evidence supported ALJ Marshall's conclusions, we affirm the judgment of the district court.
 
 
 2
 * Rickard raises four challenges to ALJ Marshall's conclusions. He argues that the ALJ: (1) should have accepted the opinion of Dr. Tom Evans, an orthopedist who had examined him, with regard to his physical limitations; (2) should have accepted the opinion of one of two psychologists, Wayne Fuller or Dr. Joel Dill, with regard to his psychological limitations, or, alternatively, that the ALJ should have found that those limitations met the relevant Listing of Impairments; (3) failed to consider his physical and psychological impairments in combination; and (4) failed to accord proper weight to the opinion of the Kentucky Department of Workers' Claims, which found Rickard to be disabled for the purpose of Kentucky's workers' compensation statute.
 
 
 3
 We review each of Rickard's arguments in turn, mindful that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Our review therefore is limited to a determination of whether the ALJ applied the correct legal standards, and whether substantial evidence in the record supports the findings. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir.1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 399-400 (1971).
 
 II
 
 4
 In determining Rickard's residual capacity to perform work, the ALJ relied on the opinion of Dr. Rodger Zwemer, an orthopedist who examined Rickard on October 27, 1992. Dr. Zwemer determined that Rickard's "x-rays show some very mild degenerative changes but otherwise his spine looks quite good." Accordingly, he estimated that Rickard could lift and carry up to 25 pounds occasionally and 5-10 pounds frequently; stand a total of six hours a day; sit a total of six hours a day; and reach, push, and pull without impairment.
 
 
 5
 The ALJ formulated a hypothetical question for Dr. Thomas Mehaffey, a vocational expert, based on Dr. Zwemer's evaluation in combination with an evaluation of Rickard's psychological limitations. Dr. Mehaffey testified that a person with such limitations could perform 150,000 light unskilled jobs within a 200-mile radius of Rickard's home, as well as 50,000 unskilled sedentary jobs within the same radius.
 
 
 6
 Dr. Evans evaluated Rickard on October 7, 1988, as having a very poor range of motion in the lower spine.[2] He estimated that Rickard could lift no more than 10 pounds occasionally; could stand no more than two hours a day; and could not bend, stoop, climb, or push or pull heavy objects. In response to a hypothetical question based on these estimates and an evaluation of Rickard's psychological limitations, Dr. Mehaffey testified that a person with such limitations could perform 750-1000 jobs within a 200-mile radius of Rickard's home, such as telephone order clerk, alarm monitor, and telephone operator.
 
 
 7
 Rickard argues that Dr. Evans's opinion was binding on the ALJ, or at least that he failed to explain adequately the reasons for his rejection of that opinion. Rickard is incorrect on both counts. The opinion of a treating physician such as Dr. Evans is binding on an ALJ only if no evidence contradicts that opinion. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In this case, Dr. Zwemer's analysis provides the contradictory evidence. A review of the record demonstrates that the ALJ's explanation for his rejection of Dr. Evans's opinion was not only adequate, but persuasive. In Rickard's first hearing, ALJ Flenner determined that Dr. Evans's opinion was flawed because it was based on an uncritical acceptance of Rickard's subjective complaints of pain. ALJ Marshall agreed with ALJ Flenner's rejection of those complaints, noting that Rickard had implausibly claimed that his injury required him to lie on a couch for 12 hours a day.
 
 
 8
 Rickard also argues that ALJ Marshall was bound by collateral estoppel to accept Dr. Evans's evaluation, arguing that ALJ Flenner had based his findings on that evaluation. ALJ Flenner only found in the alternative that, even if Dr. Evans's evaluation were to be accepted, Rickard would still have a residual capacity to perform work; as already noted, ALJ Flenner in fact specifically rejected Dr. Evans's conclusions. Therefore, ALJ Marshall was not precluded from electing to accept Dr. Zwemer's evaluation over Dr. Evans's, and substantial evidence supports that election.[3]
 
 III
 
 9
 In formulating his hypothetical questions for the vocational expert, ALJ Marshall relied on the opinion of Dr. William Weiss, a psychiatrist, with regard to Rickard's psychological impairments. He determined that Rickard suffers from depression, ruminative anxiety, dysthymia, and a somatoform pain disorder, which is consistent with a serious impairment in occupational functioning. However, he also determined that Rickard could understand and follow instructions; perform simple, repetitive tasks; and relate to co-workers and supervisors.
 
 
 10
 In response, Rickard offers the opinions of two psychologists that his impairments are severe. Wayne Fuller testified that Rickard could not tolerate an eight-hour work day, and that Rickard would be highly susceptible to even minimal job stress. Also, Dr. Joel Dill testified in Rickard's proceedings before the Kentucky Department of Workers' Claims that Rickard has low ego strength, is significantly confused, and has high levels of anxiety.[4]
 
 
 11
 ALJ Marshall did not err by accepting Dr. Weiss's opinion over those of Fuller or Dr. Dill. In so doing, the ALJ relied on the testimony of Dr. Joseph Nesbitt, a clinical psychologist who did not directly examine Rickard but instead analyzed the reports of the various psychological limitations were largely consistent, and that Dr. Weiss's evaluation provided the best statement of Rickard's occupational limitations. Rickard provides no reason to reject Dr. Nesbitt's opinion. We therefore reject Rickard's argument instead.
 
 
 12
 Rickard also argues that the ALJ should have found that his somatoform pain disorder met the Listing of Impairments, which result would require a finding that he is disabled. See 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.07(B). He bases this argument on the testimony of Dr. Nesbitt that the question of whether Rickard satisfied that section's requirement of a deficiency of concentration was a "very close call." Section 12.07 requires the claimant to demonstrate that his disorder results in at least three of the following four conditions: (1) marked restrictions in the activities of daily living; (2) marked difficulties in maintaining social functioning; (3) deficiencies of concentration; (4) repeated episodes of deterioration or decompensation at work. Ibid.; see Hogg v. Bowen, 987 F.2d 328, 334 (6th Cir.1993). Dr. Nesbitt testified that Rickard's restrictions in the first two categories were only moderate, and that he could not make a determination with regard to the fourth criterion. Therefore, even if we were inclined to ignore the requirement that we defer to an ALJ's decision on a "very close call" that is supported by substantial evidence, the record would still not support a conclusion that Rickard satisfies at least two more of the criteria of § 12.07.
 
 IV
 
 13
 Rickard next argues that the ALJ failed to evaluate his physical and psychological impairments in combination. This argument is baseless. The ALJ specifically based his determination on the answer he received from the vocational expert, Dr. Mehaffey, in response to a hypothetical question that incorporated the physical limitations as described by Dr. Zwemer and the psychological limitations described by Dr. Evans. Dr. Evans determined that Rickard suffered from a somatoform pain disorder that caused him to exaggerate the level of pain that he feels, but that he is still able to perform work. Dr. Mehaffey's testimony, and consequently the ALJ's findings, were based explicitly on an understanding that Rickard felt pain to a degree beyond that justified by the physical evidence. The findings were based, then, not on a failure to consider impairments in combination, but on the fact that the medical evidence did not support a finding of totally disabling pain.
 
 V
 
 14
 Finally, Rickard argues that the ALJ did not accord proper weight to the findings of the Kentucky Department of Workers' Claims, which found him to be disabled. Rickard wisely concedes that that determination was not binding on the Social Security Administration, see 20 C.F.R. §§ 404.1504, 416.904, and argues instead that the ALJ should have taken the evidence in those proceedings into account. This argument also fails, as the ALJ gave those proceedings all the consideration that they were due. The state agency only found that Rickard could not return to his previous work in the coal mines; the ALJ also so found. The ALJ specifically discussed the evidence presented to the state agency. In particular, Dr. Dill gave the testimony described above at the state hearing. Even if we were to find that the conclusions of the state agency and the ALJ were in conflict, we would not be troubled by that fact. The ALJ noted that he had access to evidence that was more recent, more thorough, and more damning to Rickard's position than the evidence before the state agency. The ALJ therefore did not err in rejecting the state agency's conclusions.
 
 
 15
 The district court correctly determined that substantial evidence supported the determination that James Rickard is not disabled. The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 In the interim, Rickard also filed a new application for disability insurance benefits and an application for supplemental security income benefits. Those applications were based on the same facts, and ALJ Marshall decided them along with the original application
 
 
 [2]
 Dr. Evans most recently examined Rickard in October 1990, and found no significant change in Rickard's physical state as of that date
 
 
 [3]
 We therefore express no view as to whether 750-1000 jobs would constitute "a significant number of jobs in the national economy" under the circumstances of this case
 
 
 [4]
 Dr. Dill also testified in Rickard's first Social Security hearing as a vocational expert. Rickard argues that Dr. Dill's subsequent favorable testimony undermines the reliability of his earlier testimony that Rickard was not disabled. ALJ Marshall correctly determined that the wearing by Dr. Dill of two hats posed no problem; Dr. Dill was only responding to hypothetical questions in the first hearing. In any event, ALJ Marshall based his finding as to Rickard's residual functional capacity on the testimony of Dr. Mehaffey, not Dr. Dill