Clarence WALTERS, Plaintiff–Appellant,

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant–Appellee.**

No. 96–2214.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 9, 1997.

Decided Oct. 15, 1997.

Kerry S. Johnson (argued and briefed), Weisberg & Walkon, Southfield, MI, for Plaintiff–Appellant.

Julie Flanagan (argued) Social Security Administration, Office of the General Counsel, Lisa G. Patrick (briefed), Chicago, IL, for Defendant–Appellee.

Before: JONES, SUHRHEINRICH, and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Claimant–Appellant Clarence Walters appeals a district court decision affirming the Commissioner of Social Security's denial of his application for disability insurance benefits under the Social Security Act (the "Act"), 42 U.S.C. § 423. For the reasons that follow, we affirm.

## I. BACKGROUND

### A. Facts

Walters, who has a twelfth-grade education, worked for Chrysler Motor Car Company from 1972 to 1989 as a press operator. Joint Appendix (J.A.) at 37–38 (Tr. of ALJ Hr'g at 9–10); Appellant's Br. at 2; Appellee's Br. at 3. His job required him to operate both small presses (which involved constant standing/walking and lifting of approximately 3–5 pounds) as well as heavy presses (which involved constant standing/walking and lifting of 25–30 pounds). J.A. at 39–41 (Tr. of ALJ Hr'g at 11–13). Walters also testified that his job sometimes required him to stoop, bend, and reach overhead. J.A. at 58–59 (Tr. of ALJ Hr'g at 30–31). In November 1989 Walters was in-

1. Walters had been laid off earlier that year and was collecting unemployment compensation benefits when he elected to retire. J.A. at 37 (Tr. of ALJ Hr'g at 9). At the time of his hearing before the administrative law judge ("ALJ"), Walters had two sources of income: his pension from Chrysler and social security retirement income. J.A. at 38 (Tr. of ALJ Hr'g at 10).

2. Walters has a history of medical problems/complaints extending beyond the back pains and

volved in an automobile accident. The next month, he elected early retirement from his job at Chrysler.[1] J.A. at 37 (Tr. of ALJ Hr'g at 9). According to Walters, he became disabled around January 1, 1990 due to back pains, hypertension, and dizziness[2] and has been unable to engage in substantial gainful employment ever since this time. Walters was sixty-one years of age when he applied for disability insurance benefits on April 29, 1993. J.A. at 61 (Ex. 1. at 1).

The medical evidence in the administrative record consisted of the opinions and diagnoses of a treating physician (Dr. Austin), an internist who examined Walters one time at the Commissioner's request (Dr. Banerji), and a treating chiropractor (Mr. Katz). J.A. at 98, 101–03, 108–44 (Exs.13, 15, 17). The following summarizes their findings:

Dr. Austin's findings and observations [made between January 1983 and October 1994]:(1) hypertension with blood pressure readings consistently within the normotensive range when on medication, (2) reports of dizziness, (3) acute lumbosacral strain with no focal neurological deficits, (4) gastritis, (5) atypical chest pains with negative results on a 1988 thallium stress test and no acute EKG changes.

Dr. Banerji's diagnoses and conclusions [from examination in August 1993]:(1) hypertension that is well-controlled and no evidence of cardiomegaly or cardiac failure, (2) history of neck and back pains but no objective physical findings or functional limitations orthopedically (no muscle spasms, no limitation of movement or pain in spine, and straight leg raising test revealed 90–degrees movement on both sides with no complaint of pain from patient), (3) marked dizziness clinically observed by physician only on patient's lying flat on bed (exact etiology undetermined), (4) his-

hypertension including gastritis, anxiety and depression, "nerves," atypical chest pain, and arm and leg pain, but Walters's appeal focuses on the former two ailments plus dizziness, which may or may not be related to the hypertension. J.A. at 18, 128–31 (ALJ Decision at 1; Ex. 17 at 21–24). He further reports having injured his back on the job at Chrysler at some point before the 1989 automobile accident. J.A. at 52 (Tr. of ALJ Hr'g at 24).

tory of pain in abdomen but no objective physical findings, (5) history of chest pain suggestive of angina pectoris.

Mr. Katz's comments and findings [made between November 1992 and April 1993]:(1) diagnosis of chronic interligamentous lumbar sprain, (2) a limited range of motion in Walters's lumbar spine (45 degrees) with moderate to severe pain produced in all ranges of motion, (3) evidence of muscle spasm upon palpitation, (4) no sensory, motor, or reflex abnormalities, (5) x-rays of the lumbar spine taken on 11/13/92 were essentially negative, (6) ability to walk, to climb stairs and get on/off examination table with difficulty, and inability to squat, and (7) advised Walters to refrain from extensive lifting, bending, remaining on his feet for long periods of time.

In terms of medication, Walters was taking Parafon Forte, a muscle relaxer, for back aches; Zantac for gastritis; Dyazide and Cardizem for hypertension; an occasional Valium (6–7 times in the six months preceding the administrative law judge hearing); and no separate medication for dizziness. J.A. at 54–56 (Tr. of ALJ Hr'g at 26–28).

Walters testified that he was able to engage in the following activities: drive approximately three times a week, attend church three times a week where he serves as an elder, walk two miles, prepare three meals a day, run errands, do shopping, pay his bills, watch television, and read the Bible. J.A. at 34, 46, 49–51 (Tr. of ALJ Hr'g at 6, 18, 21–23).

### B. Procedural History

Walters's application for disability insurance benefits was denied by the agency both initially and upon reconsideration. After then conducting a hearing at Walters's request, an ALJ issued a decision on March 28, 1995 that was consistent with previous agency determinations. The ALJ found that the medical evidence established claimant's hypertension, history of lumbosacral strain with low back pain, and gastritis. J.A. at 22 (ALJ Decision at 5). However, at Step Four of the five-step sequential analysis prescribed by 20 C.F.R. § 404.1520 (1997) for evaluating dis-

ability, the ALJ determined that since the claimant retained the residual functional capacity, despite his impairments, to perform "the full range of medium work" including his past relevant work as a press machine operator, the claimant was not disabled for social security purposes. J.A. at 21 (ALJ Decision at 4). The Appeals Council declined review on August 15, 1995, and subsequently on August 22, 1996 the district court adopted the magistrate judge's Report and Recommendation and granted summary judgment in favor of the Commissioner.

The district court had original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). This court has appellate jurisdiction, pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, over the district court's final judgment which Walters has timely appealed.

## II. ANALYSIS

■ This court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *see also Preslar v. Secretary of Health and Human Servs.,* 14 F.3d 1107, 1110 (6th Cir.1994). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Accordingly, this court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir.1984).

■ Under the Social Security Act, 42 U.S.C. § 423(a), an individual is entitled to disability insurance benefit payments if he (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. Since no one disputes Walters's eligibility under the first three criteria, the issue on this

appeal is whether the ALJ had substantial evidence to support his determination that Walters was not "under a disability." Section 423(d)(1)(A) of Title 42 defines "disability" to be the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .

Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . .

42 U.S.C. § 423(d)(2). In making a determination as to disability under the above definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. Our focus will be on Step Four.[3] The five steps can be summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.
2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
5. Even if claimant's impairment does prevent him from doing his past rele-

vant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

20 C.F.R. § 404.1520 (1997); *see also Bowen v. Yuckert,* 482 U.S. 137, 140–42, 107 S.Ct. 2287, 2290–92, 96 L.Ed.2d 119 (1987); *Hogg v. Sullivan,* 987 F.2d 328, 331–32 (6th Cir. 1993). Step Four "necessarily entails a comparison of the physical demands of the claimant's past relevant work with [his] present mental and physical capacity." *Veal v. Bowen,* 833 F.2d 693, 697 (7th Cir.1987). Since the ALJ has acknowledged Walters's hypertension and history of back problems, the medical issue is really one concerning degree of severity—whether these ailments were *so severe* that Walters did not have the residual functional capacity to perform his past work as a press operator. Furthermore, during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five. *See Young v. Secretary of Health and Human Servs.,* 925 F.2d 146, 148 (6th Cir.1990) (citing *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980)); *Cole v. Secretary of Health and Human Servs.,* 820 F.2d 768, 771 (6th Cir.1987). Thus, the Commissioner's denial of Walters's disability claim at Step Four is proper if there is substantial evidence in the record to support the conclusion that Walters could perform his past relevant work and had therefore failed to make a prima facie case of being under a disability. *See Young,* 925 F.2d at 148.

### A. Treating Physician and Treating Chiropractor Opinions

 Walters contends that in finding him capable of performing his past relevant work, the ALJ erred in failing to "accord proper deference to the opinions of [his] treating doctors"—Dr. Austin and Mr. Katz. Appellant's Br. at vii. In general, the opinions of treating physicians are accorded greater weight than those of physicians who

---

**3.** Only Step Four is relevant to the resolution of this appeal since the ALJ seems to have conceded Steps One and Two, and the ALJ's favorable determination at Step Three logically is not being contested by Walters. We do not need to reach Step Five nor any of the arguments Walters has advanced concerning Step Five since the ALJ's conclusion at Step Four is supported by substantial evidence, rendering any such discussion inconsequential.

examine claimants only once. *See Kirk v. Secretary of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir.1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). In fact, pursuant to agency regulations, if the Commissioner finds "that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2) (1997) (entitled "Evaluating medical opinions about your impairment(s) or disability."). Despite the foregoing, this court concludes that Walters's claim is without merit because in this case the ALJ was not bound to adopt the opinions of either Dr. Austin or Mr. Katz.

As Walters's treating physician, Dr. Austin's opinions do fall within the scope of 20 C.F.R. § 404.1527(d)(2). Dr. Austin's opinions, however, are themselves not as conclusive regarding Walters's residual functional capacity as Walters claims; Dr. Austin makes no assertion that Walters's impairments have rendered him unable to perform the functions of his past job as a press operator. Rather, Dr. Austin simply documents Walters's hypertension, back pains, and dizziness—impairments the Commissioner does not dispute. Walters himself is unable to direct this court to any portion of Dr. Austin's records which support the claim that his impairments are disabling. Even if Dr. Austin's findings of hypertension and back pains included such a diagnosis, substantial evidence to the contrary exists in the record. *See* 20 C.F.R. § 404.1527(d)(2) (1997) (indicating that controlling weight is only appropriate when the medical opinion "is not inconsistent with the other substantial evidence in [the] case record"). In particular, Dr. Banerji notes that the hypertension was well-controlled, the dizziness was marked only when the patient was lying down, Walters had full movement of spine and 90–degrees movement in leg raising with no pain, and the back problems were not supported by any physical findings. Dr. Austin's own records report Walters's blood pressure readings to be within the normotensive range

when on medication. Furthermore, any claim by Dr. Austin that Walters suffered from impairments of disabling severity would not be supported by detailed, clinical, diagnostic evidence in his reports. This would be a sufficiently valid reason not to accept the opinions of a treating medical doctor. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). In such circumstances, the Commissioner "is not bound by the treating physician's opinions, and ... such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." *Bogle v. Sullivan*, 998 F.2d 342, 347–48 (6th Cir.1993); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 287 (6th Cir.1994).

With regard to Mr. Katz, Walters asks this court to adopt the view that "the treating chiropractor [should be] considered a treating doctor" and "in the absence of evidence to the contrary" or "a showing of nonreliability" must be accorded deference pursuant to 20 C.F.R. § 404.1527(d)(2). Appellant's Br. at 12. Yet, logic and the plain language of the regulations suggest that a treating source under 20 C.F.R. § 404.1527(d)(2) must be a *medical* source and that a chiropractor is not a medical source. The controlling weight provision is found under a section heading that refers specifically to medical opinions, and in the regulations chiropractor opinions are not listed as one of the five types of "acceptable medical sources" but are instead listed under the separate heading of "other [non-medical] sources." *Compare* 20 C.F.R. § 404.1513(a) (1997) *with* 20 C.F.R. § 404.1513(e) (1997). We, therefore, must agree with the Second Circuit's conclusion that under the current regulations, the ALJ has the discretion to determine the appropriate weight to accord a chiropractor's opinion based on all evidence in the record since a chiropractor is not a medical source. *See Diaz v. Shalala*, 59 F.3d 307, 313–14 (2d Cir.1995); *see also Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir.1991) (reading 20 C.F.R. § 404.1513 as "accord[ing] less weight to chiropractors than to medical doctors").

Although Walters could offer Mr. Katz's opinions to help the Commissioner assess the

extent to which his impairments affect his ability to work, the ALJ was not required to adopt the opinions of a treating chiropractor nor to give them controlling weight. In making an evaluation of Walters's condition, the ALJ did consider the opinions of both Dr. Austin and Mr. Katz and weighed them along with all other evidence in the record. We reject Walters's claim that the ALJ was required to accord any more deference than this.

## B. Credibility Assessment

Walters also maintains that the ALJ's determination concerning his ability to perform his past relevant work is faulty because it was based partially on the ALJ's improper assessment of his credibility. In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant. *See Kirk v. Secretary of Health and Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). Furthermore, an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. *See Villarreal v. Secretary of Health and Human Servs.*, 818 F.2d 461, 463 (6th Cir.1987). Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *See Beavers v. Secretary of Health, Educ. and Welfare*, 577 F.2d 383, 386–87 (6th Cir.1978). We conclude, however, that substantial evidence exists in the record to support the ALJ's adverse credibility finding.

An individual's statements as to "pain or other symptoms will not alone establish that [he is] disabled...." 20 C.F.R. § 404.1529(a). This court has developed a two-prong test to evaluate a claimant's assertions of disabling pain:

First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Felisky v. Bowen*, 35 F.3d 1027, 1038–39 (6th Cir.1994) (quoting *Duncan v. Secretary of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir.1986)); *see also* 20 C.F.R. § 404.1529(a). Walters's medical records contain very little objective, physical, or clinical evidence of disabling severity, and no medical evidence has been presented suggesting that Walters's medical conditions can reasonably be expected to produce the alleged disabling pain. Both medical physicians who examined Walters's hypertension found that it was well-controlled with medication. There is also no medical evidence of Walters experiencing any dizziness except when he is lying down. Furthermore, Mr. Katz's objective physical findings concerning range of movement and muscle spasms are contradicted by Dr. Banerji's findings that Walters had full range of motion of the spine, 90–degrees leg lifting capabilities without pain, and no muscle spasms. Tests showed no focal neurological deficits and no sensory, motor, or reflex abnormalities, and all x-rays taken were negative. The regulations indicate that if disabling severity cannot be shown by objective medical evidence alone, the Commissioner will also consider other factors, such as daily activities and the type and dosage of medication taken. *See* 20 C.F.R. § 404.1529(c)(3). In so doing, the Commissioner has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record. *See Bradley*, 862 F.2d at 1227. The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis. *See Blacha*, 927 F.2d at 230.

Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence. *See Bradley v. Secretary of Health and Human Servs.*, 862 F.2d 1224, 1227 (6th Cir.1988); *cf. King*, 742 F.2d at 974–75 (noting the lack of substantial evidence for any

adverse credibility finding where the evidence points only to one reasonable conclusion—that the claimant does not possess the residual functional capacity to perform any gainful employment). In Walters's case, the medical evidence regarding severity is not consistent and is capable of supporting more than one reasonable conclusion. An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir.1990); *Crisp v. Secretary of Health and Human Servs.*, 790 F.2d 450, 453 (6th Cir.1986). Walters admits being able to run all of his errands, walk two miles, prepare all of his meals, and drive three times a week. The ALJ acted properly when he took these factors into account.

### C. Ability to Perform Past Relevant Work

Since the ALJ made no error concerning either the treating physician's or chiropractor's opinions or the credibility assessment, we turn now to review briefly the record as a whole to determine whether there is substantial evidence to support the ALJ's finding that Walters was not disabled within the meaning of the Act. Such evidence clearly exists.

The record contains evidence that Walters's hypertension was well-controlled, and no evidence was presented suggesting it was debilitating in any way. Besides his own complaints of dizziness, marked dizziness was observed by a physician only when Walters was lying down. Furthermore, although there is evidence of lower-back problems, there is very little objective, physical evidence showing that the back pains were so severe that he was incapable of lifting 25–30 pounds. Although Mr. Katz advised Walters to refrain from *extensive* lifting, he gave no indication of what this entailed. *See Villarreal*, 818 F.2d at 462–63 (noting that the treating physician's use of the phrases "heavy labor" or "a lot of stress" provided "qualified opinions, at best, as to the degree of disability"). On the other hand, many medical tests either failed to confirm the alleged severity or seemed to show that he had full movement of his spine and legs without pain. Finally, Walters's own description of his daily and weekly routine do not contradict the ALJ's conclusion that Walters was able to perform the functions of his past job as a press operator.

### III. CONCLUSION

The administrative record contains substantial evidence to support the Commissioner's conclusion that Walters had the residual functional capacity to perform his past relevant work and was, therefore, not disabled within the meaning of the Social Security Act. That there may be substantial evidence in the record to support another conclusion is irrelevant. The judgment of the district court is **AFFIRMED**.