*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0431p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JOHN M. VALLEY,

*Plaintiff-Appellant,*

*v.*

COMMISSIONER OF SOCIAL SECURITY,

*Defendant-Appellee.*

No. 04-4132

>

---

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 03-01261—Donald C. Nugent, District Judge.

Submitted: September 22, 2005

Decided and Filed: October 28, 2005

Before: COLE, ROGERS, and McKEAGUE, Circuit Judges.

---

**COUNSEL**

---

**ON BRIEF:** James A. Vitullo, Austintown, Ohio, for Appellant. Kathleen L. Midian, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

---

**OPINION**

---

R. GUY COLE, JR., Circuit Judge. Plaintiff-Appellant, John M. Valley, appeals the district court's decision in favor of Defendant-Appellee, the Commissioner of Social Security, requiring Valley to repay social security benefits to the Social Security Administration. For the following reasons, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Plaintiff-Appellant John M. Valley was injured in a swimming pool accident in 1989 and began to receive social security disability benefits in 1990. In 1995, Valley returned to work in a family-owned business. Although Valley notified the Social Security Administration ("Administration") of his return to work, the Administration continued to send Valley benefit checks. In January 1996, Valley sought clarification from the Administration regarding his entitlement to continued benefits, and in response the Administration sent him a pamphlet entitled "Benefits for Disabled People Who Return to Work." The Administration also asked Valley to complete a form describing his employment. The form stated that if Valley's work was "substantial gainful activity," he would no longer be entitled to benefits. Despite Valley's submission of his

1

current work status, the Administration continued to send him checks. In addition, each year Valley received a letter describing his current benefits and informing him of his benefit increase. These letters continued from 1996 through 1999.

In June 2000, the Administration notified Valley that he was not entitled to disability benefits and requested that he remit $73,244 in overpaid benefits. Valley requested a waiver of the repayment, and the Administration denied his request both initially and upon reconsideration. Valley requested rehearing before an administrative law judge ("ALJ"). Upon a hearing, the ALJ denied Valley's request for waiver of repayment. The Social Security Appeals Council denied Valley's request for review of the ALJ's determination.

Valley sought judicial review of the ALJ's determination in district court. On July 24, 2004, a magistrate judge filed a Report and Recommendation ("Report") that the district court affirm the Administration's final decision, finding that substantial evidence supported the ALJ's decision. Valley filed an objection to the Report. On August 14, 2004, the district court adopted the Report in a Memorandum and Opinion. This timely appeal followed.

## II. ANALYSIS

### A. Standard of Review

This Court reviews the district court's conclusion in social security cases *de novo*. *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990). However, we review the underlying findings of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). A decision is supported by substantial evidence where a reasonable mind could find that the evidence is adequate to support the conclusion reached. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). We may not reverse a decision supported by substantial evidence, even if we might have arrived at a different conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

### B.    Whether requiring repayment would "defeat the purpose" of Title II of the Social Security Act

The Social Security Act mandates repayment of overpayments except where an individual "is without fault" and "such adjustment or recovery would defeat the purpose of [Title II of the Social Security Act] or would be against equity and good conscience." 42 U.S.C. § 404(b). The ALJ found that denying Valley's waiver request would neither defeat the purpose of Title II nor violate equity and good conscience. Accordingly, the ALJ found that the issue of fault need not be considered.

Defeating the purpose of Title II means "depriving a person of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508(a). "[R]ecovery will defeat the purposes of Title II in (but is not limited to) situations where the person from whom recovery is sought needs substantially all of his current income . . . to meet current ordinary and necessary living expenses." *Id.* § 404.508(b). In making this determination, the Administration may look to the individual's financial resources in addition to her or his income. *Id.* § 404.508(a).

Valley's financial resources have fluctuated over the course of his pursuit of this matter. In Valley's original request for waiver of repayment dated July 22, 2000, he reported that he had $774,000 in assets in a retirement account, money or mutual funds, bonds, stocks, and a trust fund. Valley also reported a net income of approximately $6,300 a month in his work as a partner in a food service business and $600 a month in income from real estate. In addition, Valley reported that he owned a second home valued at $179,000 with a loan balance of $137,000. Valley stated in his

request for waiver that his savings were for medical care and that he could not convert this money to cash because he needed it for future medical needs.

Valley's financial resources decreased substantially between 2000 and 2002 due to changes in the stock market. Valley's assets in 2002 were valued at approximately $315,000. He continued to earn a salary at the food services corporation and continued to own two homes.

Valley reported monthly household expenses totaling $7,611. This amount included, among other expenses, $1,000 per month for food, $400 per month for clothing, and $1,800 per month for medical expenses. The Social Security Administration requested documentation of the reported expenses, which Valley submitted in 2001. While Valley did provide documentation for some expenses, he was unable to provide any receipts for his food or clothing budgets.

Based upon Valley's financial circumstances, the ALJ found that Valley had sufficient assets to repay the overpayment without defeating the purpose of the Social Security Act. In determining that Valley was not entitled to a waiver, the ALJ found that Valley receives monthly net earnings of approximately $7,000 and possesses investment funds of approximately $315,000. In the view of the ALJ, these earnings and assets did not support Valley's claim to a waiver.

Valley makes two arguments to support his claim that repayment would defeat the purpose of Title II. Valley argues that the assets in one of his accounts, totaling $154,072, were generated from his personal injury lawsuit and earmarked for his "expensive and necessary present and future medical expenses," and that therefore the ALJ and district court erred in considering these assets in their calculations. Valley cites no law for this argument, and we are not persuaded by it. First, Valley does not explain why the origin of his assets is relevant for determining the sufficiency of those assets for repayment. Second, the fact that particular assets are used to cover Valley's expenses does not mean that they should be disregarded in evaluating whether Valley can afford to repay the overpayment; on the contrary, such funds must be considered to determine whether Valley "needs substantially all his current income . . . to meet current and ordinary living expenses." *See* 20 C.F.R. § 404.508(b). Finally, Valley's argument that the ALJ should be required to ignore any assets that a claimant has designated for future use is unpersuasive. Any speculation regarding Valley's future needs would not outweigh the substantial evidence supporting the ALJ's conclusion that Valley has sufficient means to repay the Administration.

Valley also argues that the district court should not have considered the equity in his two homes in determining whether the record substantially supported the ALJ's conclusions. This issue is irrelevant, since we find that the financial resources listed in the ALJ's findings of fact – namely, Valley's $315,000 in financial investments and almost $7,000 in monthly income – provide substantial support for the ALJ's determination. Consequently we need not consider Valley's home equity. Because we review the ALJ's findings as if we were the first reviewing court, *see Crum*, 921 F.2d at 644, the district court's mention of Valley's real property, even if it were in error, is of no consequence.

Furthermore, we do not view the district court's consideration of Valley's real property to be in error. Valley argues, again without citation to law, that consideration of these assets is improper because: (i) his second home was purchased to house his sister nearby so that she could assist in his daily care; and (ii) the district court did not consider how he would pay back any home equity loan he took out on the premises. Valley does not elaborate on why these factors make consideration of the home equity improper. We infer that Valley could not easily sell either of his residences. Nevertheless, the law does not require the ALJ to ignore the value of a claimant's house or other non-liquid assets in evaluating whether a claimant can afford repayment, and we decline to create such a policy. In addition, if Valley chooses to take out a home equity loan, the law does not require either the Administration or the courts to advise Valley on that loan.

## C.  Whether requiring repayment would "be against equity and good conscience"

Recovery of an overpayment is against equity and good conscience where the individual "changed his or her position for the worse . . . or relinquished a valuable right . . . because of reliance upon a notice that a payment would be made or because of the overpayment itself . . . ." 20 C.F.R. § 404.509(a)(1).  A claimant may also demonstrate that recovery of an overpayment is against equity and good conscience where the individual "accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration . . . with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto . . . ."  *Id.* §§ 404.510a; 404.512.  Individual financial circumstances "are not material to a finding of against equity and good conscience."  *Id.* § 404.509(b).

Valley argues that recovery of the overpayment should be excused because the correspondence he received from the Administration constituted "erroneous information from an official source" upon which he relied.[1]  In support of this argument, Valley cites to *Gladden v. Callahan*, 139 F.3d 1219, 1223 (8th Cir. 1998), in which the Eighth Circuit found that an ALJ's oral advice to the plaintiff at his hearing regarding how many hours plaintiff could work without losing benefits satisfied § 404.510a's requirement of "reliance on erroneous information from an official source within the Social Security Administration . . . with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto."

Here, the Administration correspondence does not constitute an "interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto."  Although the letters necessarily imply some interpretation of the Act and its regulations because they outline Valley's entitlement to benefits and a benefits increase, they do not purport to make any explicit or specific interpretation.  Rather, the letters appear to be supplements to the benefit checks that notify the recipient of the amount of benefits awarded.  If these documents – obviously form letters – constituted official interpretation of the statute or regulations sufficient to trigger the good conscience exception to repayment, virtually every Social Security benefit recipient would be entitled to waiver of repayment assuming they received benefits of any kind and a letter describing those benefits.  Accordingly, the ALJ's determination that the benefit notices sent with benefit checks do not constitute interpretations of the Act or regulations is supported by substantial evidence.  *See Broekert v. Sullivan*, 751 F. Supp. 1361, 1363 (W.D. Wis. 1990) (concluding that "benefit statements routinely sent with benefit checks cannot reasonably be classified as an interpretation of the Act or its regulations").

## D.  Whether Plaintiff is without fault

Because we uphold the ALJ's determinations regarding the second prong of 42 U.S.C. § 404(b), that recovery of overpayment neither defeats the purpose of the Act nor is against equity and good conscience, we need not address the first prong requiring Valley to have been "without fault" in accepting the overpayment.[2]

---

[1]In the district court, Valley argued that he relied on the overpayment to his detriment because he lost money in the stock market, therefore making repayment against equity and good conscience.  Valley does not reassert this argument on appeal.  Consequently we do not address it.

[2]We recognize that where an individual demonstrates satisfaction of 20 C.F.R. § 404.510a, the individual has also satisfied the "without fault" requirement of 42 U.S.C. § 404(b).  *See* 20 C.F.R. § 404.512; *Gladden*, 139 F.3d at 1223 ("[S]omeone who relies on erroneous information from an official source meets both requirements for waiver set forth in 42 U.S.C. § 404(b).").  As discussed in Part C, however, we do not find that Valley's circumstances satisfy the requirements of §404.510a.

### III.  CONCLUSION

For the preceding reasons, we **AFFIRM** the judgment of the district court.