NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0579n.06

No. 17-1134

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| ABDULLAH SHRIF AMIR, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| COMMISSIONER OF SOCIAL SECURITY, | ) COURT FOR THE EASTERN |
| | ) DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) |
| | ) |
| | ) |
| | ) |

BEFORE: KEITH, ROGERS, and MCKEAGUE, Circuit Judges.

**DAMON J. KEITH, Circuit Judge.** This matter arises from Appellant Abdullah Shrif Amir's ("Amir") application for Social Security Disability Insurance benefits and Supplemental Security Income, which was denied by the Commissioner of Social Security ("Commissioner") through a decision issued by an Administrative Law Judge ("ALJ"). Amir then appealed the Commissioner's decision to the United States District Court of the Eastern District of Michigan, which subsequently upheld the Commissioner's ruling. Amir now appeals the district court's decision, contending that the ALJ's reasons for denying his claims were not based on substantial evidence. We disagree and affirm.

## I. BACKGROUND

Amir was born on May 14, 1964, and was 47 years old on his purported onset date. (R. 13-6, Tr. 164, Pg. ID 203). He was 49 years old at the time of the ALJ's decision. (*Id.*) His

primary language is Arabic. (R. 13-6, Tr. 165, Pg. ID. 204). Amir came to the United States as a teenager and has a tenth-grade education; he completed one year of school in this country. (R. 13-2, Tr. 37, Pg. ID 72; R. 13-9, Tr. 409, Pg. ID 451).

On April 3, 2012, Amir filed applications for disability insurance benefits and supplemental security income, contending that he had been disabled since February 22, 2012. (R. 13-5, Tr. 132-41, Pg. ID 170-79). After his applications were denied, Amir requested a hearing before an ALJ. (R. 13-4, Tr. 78-86, 88; Pg. ID 115-23, 125). Subsequently, on February 6, 2014, the ALJ found that Amir was not disabled within the meaning of the Social Security Act under the five-step analysis found at 20 C.F.R. §§ 404.1520 and 416.920. (R. 13-2, Tr. 15-25, Pg. ID 50-60).

The ALJ first determined that Amir had not performed substantial gainful activity during the relevant period. (R. 13-2, Tr. 17, Pg. ID 52). Second, the ALJ found that Amir had several impairments, namely, arthritis of the feet, bilateral pes planus, degenerative disc disease of the cervical spine, and lumbago. (*Id.*) However, the ALJ concluded that these impairments did not meet the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R.13-2, Tr. 17-18, Pg. ID 52-53).

The ALJ also found that Amir retained the residual functional capacity ("RFC") to perform a limited range of light work. (R. 13-2, Tr. 18, Pg. ID 53). The ALJ specifically found that Amir required the option to alternate between standing and sitting every 30 minutes; he could never pull, push, or operate foot controls with either foot; he could never reach overhead with his left extremity, but he could frequently handle objects and reach in all other directions with that extremity; he could frequently balance; he could never climb ladders, ropes, or scaffolds; and he could occasionally climb stairs and ramps, stoop, kneel, and crouch. (*Id.*)

2

Lastly, the ALJ found that Amir was not disabled because he could still perform other jobs existing in significant numbers in the national economy, even though Amir could not perform his past work given his RFC. (R. 13-2, Tr. 23-24, Pg. ID 58-59). The ALJ's decision became the final decision of the Commissioner on May 19, 2015, when the Appeals Council denied Amir's request for review. (R. 13-2, Tr. 1-5, Pg. ID 36-40).

Amir subsequently sought review of the ALJ's decision by filing a complaint in the United States District Court for the Eastern District of Michigan on July 14, 2015. (R. 1, Complaint, Pg. ID 1-4). A magistrate judge issued a report and recommendation that the Commissioner's decision be affirmed on June 28, 2016. (R. 22, Report & Recommendation, Pg. ID 783-816). The magistrate judge recommended the following findings: (1) the ALJ properly evaluated the opinion of orthopedic surgeon Dr. Jiab Suleiman (*id.*, Pg. ID 807-15); (2) the ALJ's assessment of Amir's subjective complaints were supported by substantial evidence (*id.*, Pg. ID 797-807); and (3) at step five of the five-step analysis found at 20 C.F.R. §§ 404.1520 and 416.920, the ALJ appropriately relied on the testimony of a vocational expert and was not required to conclude that Amir was automatically disabled under a rule pertaining to Amir's proficiency in the English language (*id.* Pg. ID 793-97).

Amir objected to each of the magistrate judge's recommended findings on July 11, 2016. (R. 23, R&R Objection, Pg. ID 817-34). On December 6, 2016, the district court issued an opinion and judgment adopting the magistrate judge's report and recommendation, denying Amir's objections, and affirming the ALJ's decision. (R. 26, District Court Opinion, Pg. ID 854-77; R. 27, Judgment, Pg. ID 878). This timely appeal followed.

3

## II.     DISCUSSION

### A.     Standard of Review

We review a district court's conclusion in social security cases *de novo*. *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 390 (6th Cir. 2005) (citing *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). "However, we review the underlying findings of the ALJ to determine whether they are supported by susbtantial evidence." *Valley*, 427 F.3d at 390-91 (citing 42 U.S.C. § 405(g); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). "A decision is supported by substantial evidence where a reasonable mind could find that the evidence is adequate to support the conclusion reached." *Valley*, 427 F.3d at 391 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Amir qualifies for disability benefits and supplemental social security income under the Social Security Act if he is disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1). A disabled person, under the Social Security Act, is someone who is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* §§ 423(d)(1)(A), 1382c(a)(3)(A).

ALJs evaluate disability claims using a five-step sequence. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. § 404.1520(a))[1]. "If the claimant is found to be conclusively disabled or not disabled at any step, the inquiry ends at that step." *Rabbers*, 582 F.3d at 652 (citing 20 C.F.R. § 404.1520(a)). The five steps are as follows:

1) If the claimant is doing susbtantial gainful activity, the claimant is not disabled.
2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an imparment that

---

[1] Citations to the Code of Federal Regulations reflect citations to the regulations in effect at the time of the ALJ's decision.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Id.* at 652 (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); *Walters*, 127 F.3d at 529. "The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

### B. Analysis

**1. The ALJ's reasons for according little weight to orthopedic surgeon Dr. Jiab Suleiman's opinion were based upon substantial evidence**

The ALJ's decision to accord little weight to the March 2012 opinion of Dr. Jiab Suleiman was based on substantial evidence. Dr. Suleiman was Amir's treating physician, and on March 19, 2012, Dr. Suleiman completed a form for the State of Michigan Department of Human Services in which he indicated that Amir was unable to perform any job, due to arthritis in his ankles and back. (R. 13-9, Tr. 417, Pg. ID 459). Dr. Suleiman also noted that Amir could occasionally lift or carry less than ten pounds, could never lift anything weighing ten pounds or more, and could not stand or walk for more than two hours in an eight hour workday. (*Id.*)

The "treating physician rule" requires ALJs to give greater deference to opinions of treating physicians because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring

5

a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). "An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2)).

Relatedly, "the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakely*, 581 F.3d at 406 (quoting 20 C.F.R. § 404.1527(d)(2)). The good reasons "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakely*, 581 F.3d at 407 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5).

Here, the ALJ discounted Dr. Suleiman's opinion for three reasons. First, the ALJ found that Dr. Suleiman's opinion was "issued to a different governmental program." (R. 13-2, Tr. 22-23, Pg. ID 57-58). Second, the ALJ concluded that Dr. Suleiman's opinion that Amir was unable to work was an issue reserved for the Commissioner. Lastly, the ALJ found that Dr. Suleiman's

6

opinion was "not consistent with the objective studies, physical examinations, and activities of daily living included in the record for the period." (*Id.*) Amir argues that the ALJ's reasons for according little weight to the March 2012 medical opinion were not based on substantial evidence. This argument is without merit.

First, the ALJ appropriately determined that Dr. Suleiman's March 2012 opinion was prepared for the State of Michigan Department of Human Services, as opposed to Amir's Social Security disability claim. (R. 13-2, Tr. 22, Pg. ID 57). Social Security regulations in effect at the time of the ALJ's decision provide that "a decision by . . . any other governmental agency about whether [a claimant is] disabled or blind is based on its rules and is not [the Commissioner's] decision about whether [a claimant is] disabled or blind." 20 C.F.R. § 404.1504. Furthermore, "a determination made by another agency that [a claimant is] disabled or blind is not binding on [the Commissioner]." *Id.* Accordingly, the ALJ reasonably concluded that a medical opinion as to whether Amir was disabled under the State of Michigan Department of Human Services' standards had limited to minimal relevance in Amir's Social Security proceedings. Moreover, the ALJ did not discount Dr. Suleiman's opinion solely on this notion, but instead merely noted the issues triggered by the procedural posture of Dr. Suleiman's opinion before additionally reasoning that Dr. Suleiman's opinion was "not consistent with objective studies . . . ." (R. 13-2, Tr. 22, Pg. ID 57-58).

Furthermore, to the extent that Amir argues that the ALJ should have accorded more weight to Dr. Suleiman's conclusion that Amir was unable to work, Dr. Suleiman's conclusion was not entitled to judicial deference. This is so because a determination concerning whether a claimant is able to work is not a medical opinion, but is instead a legal conclusion on an issue reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for

making the determination . . . about whether [a claimant] meet[s] the statutory definition of disability . . . . A statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that we will determine that [a claimant is] disabled."); *see also Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).  Consequently, Amir's argument fails.

As previously mentioned, the ALJ also noted that he discounted Dr. Suleiman's opinion because it was inconsistent with other evidence in the record.  (R. 13-2, Tr. 22-23, Pg. ID 57-58). The ALJ explained that diagnostic imaging of the cervical spine, lumbar spine, and feet showed only "mild" or "minimal" degenerative damage.  (R. 13-7, Tr. 212, Pg. ID 252; R. 13-9, Tr. 440, 555 Pg. ID 482, 597) (cervical spine); (R.13-8, Tr. 308, Pg. ID 349; R. 13-9, Tr. 439, 621, Pg. ID 481, 663) (lumbar spine); (R.13-7, Tr. 234, Page ID 274) (feet).  Notably, the ALJ stated that physical examinations for each of Amir's physical issues "consistently . . . reported either minimal [abnormalities] or normal findings."  (R. 13-2, Tr. 19-20; Pg. ID 54-55).

Amir challenges the ALJ's assessment of Dr. Suleiman's opinion solely with respect to evidence related to Amir's foot and ankle pain.  The ALJ, however, contrasted Dr. Suleiman's opinion with the report of Dr. Amjad Shidyak, who examined Amir on June 8, 2012 at the Social Security Agency's request.  While Dr. Shidyak found that Amir had mild flattening of both feet, a wide-based gait, and mild tenderness and trace swelling of the ankles, Dr. Shidyak also found that Amir had full muscle strength and tone in all extremities, could walk unassisted, and had normal range of motion in the ankles.  (R. 13-9. Tr. 402, Pg. ID. 444).  Furthermore, Dr. Shidyak crucially opined that none of Amir's aforementioned impairments caused more than a mild limitation of physical activity.  (R. 13-9, Tr. 403, Pg ID 445).  Consequently, Dr. Shidyak's report supports the ALJ's conclusion that Dr. Suleiman's opinion was inconsistent with the record in its entirety.

Moreover, the ALJ appropriately found that Amir's daily activities further contradicted Dr. Suleiman's opinion. (R. 13-2, Tr. 21, Pg. ID 56). We can glean from the record that Amir, *inter alia*, exercised, drove, shopped in stores, reared his six children, met with family members regularly, performed routine household chores (preparing meals, ironing, cleaning, straightening the garage), and took care of his own hygiene. (R. 13-2, Tr. 36-37, Pg. ID 71-72, 78; R. 13-6, Tr. 177-80, Pg. ID 216-19; R. 13-9, Tr. 432, Pg. ID 474). Although Amir contends that the ALJ "misstated the evidence of record" because his daily activities were consistent with Dr. Suleiman's opinion, a review of the record reveals even more inconsistencies that give credence to the ALJ's decision. For example, although Amir's brother stated that Amir did not prepare meals, Amir's brother listed cooking as one of his hobbies. (R. 13-6, Tr. 178-180, Pg. ID 217-219). Additionally, Amir admitted to his physical therapist that he was able to prepare meals (R. 13-9, Tr. 432, Pg. ID 474). Accordingly, substantial evidence supports the ALJ's finding that the totality of Amir's daily functioning activities suggests greater functional capacity than described by Dr. Suleiman.

In sum, "[e]ven if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached. This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citations omitted). We will not reverse the ALJ's findings, which are supported by substantial evidence, simply because Amir cites evidence that may support a different conclusion. *Id.* The ALJ therefore did not err by discounting the March 2012 opinion of Dr. Suleiman.

## 2. Substantial evidence supported the ALJ's determination that Amir's subjective statements regarding pain were not consistent with other evidence in the record

The ALJ's determination that Amir's subjective statements regarding pain were not consistent with other evidence in the record was also supported by substantial evidence. "In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant." *Walters*, 127 F.3d at 531 (citing *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness' demeanor and credibility." *Walters*, 127 F.3d at 531 (citing *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)).

Furthermore, "[a]n individual's statements as to 'pain or other symptoms will not alone establish that [he is] disabled . . . .'" *Walters*, 127 F.3d at 531 (citing 20 C.F.R. § 404.1529(a)). This Court utilizes a two-prong test to assess a claimant's assertion of disabling pain. *See* 20 C.F.R. §416.929(a); *Buxton*, 246 F.3d at 773; *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). "First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)). "Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Rogers*, 486 F.3d at 247 (citing 20 C.F.R. § 416.929(a)). "Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve

symptoms . . .; and any other factors bearing on the limitations of the claimant to perform basic functions." *Rogers*, 486 F.3d at 247 (citing 20 C.F.R. § 416.929(c)(3)).

Here, with respect to prong one of the pain analysis, sufficient evidence supported the ALJ's finding that Amir's allegations concerning neck, lower back, and foot impairments caused certain limitations. (R. 13-2, Tr. 18-21, Pg. ID 53-56). The ALJ took into account these limitations by concluding that Amir should be relegated to light work. (*Id.*) The ALJ also accepted Amir's diagnosis of cervical spondylosis and the assertion that the impairment was consistent with claims of inflammation in his arms and hands, cervical spine pain, and weakness. (R. 13-2, Tr. 18-19, Page ID 53-54).

The ALJ did not, however, fully accept Amir's subjective statements because of inconsistencies between reports from medical providers, his hearing testimony, and Amir's statements that appear elsewhere in the record. (R. 13-2, Tr. 19-23, Pg. ID 54-58). On the issue concerning the ALJ's finding that "the evidence strongly suggest[ed] that [Amir] has exaggerated symptoms and limitations," the ALJ premised this finding, in part, on Amir's physical therapist's note of positive Waddell's signs for "overreaction." (R. 13-2, Tr. 21, Pg. ID 56; R. 13-9, Tr. 553, 566, Pg. ID 595, 608). While a positive Waddells' sign alone is not sufficient evidence of pain magnification, *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 422 n.15 (6th Cir. 2013), the ALJ also based his finding of symptom exaggeration on a July 2013 treatment note written by neurosurgeon Dr. Frederick Junn. The note reflects that Dr. Junn described Amir as "pleasant" and "in no apparent distress" even though Amir rated his pain that day as 7/10. (R. 13-2, Tr. 21, Pg. ID 56; R. 13-9, Tr. 640, Pg. ID 682). Moreover, to the extent that Amir cites information found in Dr. Junn's July 2013 treatment note that supports the

veracity of his pain allegations, Dr. Junn's note also reflects many normal neurological and musculoskeletal findings. (R. 13-2, Tr. 20, Pg. ID 55; R. 13-9, Tr. 640-41, Pg. ID 682-83).

Relatedly, Amir challenges the ALJ's lack of discussion regarding an April 2012 right knee MRI and a January 2013 left shoulder MRI. The ALJ, however, "is not required to analyze the relevance of each piece of evidence individually." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011). While not specifically discussing the aforementioned MRIs, the ALJ did account for both knee and shoulder pain by incorporating stooping, bending, and reaching limitations in his decision. (R. 13-2, Tr. 18, Pg. ID 53). Furthermore, a September 2012 lumbar spine MRI summary described degenerative changes to the spine as "mild" or "minimal"; therefore, the ALJ's conclusion that lumbar spine examinations generally reflected unremarkable findings was supported by substantial evidence. (R. 13-9, Tr. 621-22, Pg. ID 663-64).

With regard to Amir's medication regimen, the ALJ concluded that Amir used his medications on an "intermittent" basis. (R. 13-2, Tr. 20, Pg. ID 55). This conclusion was based on substantial evidence, as a January 2013 treatment note from Dr. Suleiman reflected that Amir was not taking any pain medication, while another treatment note indicated that [Amir] was taking his medications. (R. 13-9, Tr. 500, Pg. ID 542; R. 13-9, Tr. 501, Pg. ID 543). This is salient because the ALJ also noted that Amir rated his back pain as 1/10 after completing physical therapy, and his foot pain as 0/10 upon beginning physical therapy. (R. 13-2, Tr. 20-21, Pg. ID 55-56; R. 13-9, Tr. 433, 545, Pg. ID 475, 587).

Lastly, Amir challenges the ALJ's reliance on his activities of daily living and argues that the ALJ misstated the record evidence. But as we have previously noted, evidence regarding Amir's daily activities was plausibly contradictory. The ALJ's adverse inference was therefore

justified under prevailing Sixth Circuit law. *See Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.")

The ALJ's conclusion regarding the weight to give Amir's subjective statements was reasonable given the number of inconsistencies in the record, and consequently, the conclusion was supported by substantial evidence. "We may not reverse a decision supported by substantial evidence, even if we might have arrived at a different conclusion." *Valley*, 427 F.3d at 391 (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). Accordingly, we defer to the ALJ's conclusion that Amir's subjective complaints were not consistent with other evidence in the record.

### 3. The ALJ's step-five determination concerning whether Amir is able to communicate in English is supported by substantial evidence

Substantial evidence supported the ALJ's step-five conclusion regarding Amir's ability to communicate in English. Step five requires the Commission to show that the claimant "possesses the capacity to perform other substantial gainful activity that exists in the national economy." *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This mandates the Commissioner to "make a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quotation marks and citation omitted). The Commissioner can accomplish this by employing the grids found at 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The grids are composed of rules which specify whether a claimant will be found disabled or not through a particular combination of four factors: exertional capacity, age, education, and previous work experience. *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).

The grids account for only exertional limitations, which are defined as the limitations "imposed by [the claimant's] impairment(s) and related symptoms, such as pain, that affect only [the claimant's] ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b). Where a claimant suffers from a non-exertional "impairment that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength . . . rote application of the grid is inappropriate." *Abbott*, 905 F.2d at 926. "[I]f the characteristics of the claimant do not identically match the description in the grid, the grid is only used as a guide to the disability determination." *Kirk*, 667 F.2d at 528. In these situations, the ALJ must elicit additional evidence, such as expert testimony, to identify jobs in the national economy which the claimant could perform. *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 246 (6th Cir. 1987).

Here, the ALJ found that grid Rule 202.18 most closely matched Amir's disability profile. Rule 202.18 provides that a younger individual (age 45-49) is not disabled if he is limited to light work, has a limited education, and does not have transferable skills. 20 C.F.R. Pt 404, Subpt P, App 2, § 202.18. To the extent that Amir also possessed non-exertional limitations that were unaddressed by Rule 202.18, the ALJ appropriately relied on vocational expert testimony to determine, and eventually conclude, which jobs Amir could perform given his physical constraints. (R. 13-2, Tr. 24, Pg. ID 59). Although Amir challenges this finding by relying on Dr. Suleiman's opinion concluding that Amir could only perform sedentary work, we have already determined that the ALJ's decision to accord Dr. Suleiman's opinion little weight was supported by substantial evidence. Consequently, Amir's contention premised on Dr. Suleiman's conclusion regarding his ability to only perform sedentary work is unavailing.

Amir also argues that the ALJ should not have relied on the vocational expert's testimony because the ALJ did not include Amir's level of English mastery in a hypothetical posed to the

14

vocational expert, which Amir maintains would have reduced the number of jobs identified by the vocational expert. However, at the hearing in question, Amir's attorney asked the vocational expert whether his testimony would change if the individual had "rudimentary verbal English skills and little, even less . . . reading and writing English skills." (R. 13-2, Tr. 49-50, Pg. ID 84-85). The vocational expert responded that he considered the potential language barrier in identifying jobs that the hypothetical individual could perform, and conceded that this factor might affect one of the jobs he outlined, mail clerk, because it required reading at the unskilled level. (R. 13-2, Tr. 50, Pg. ID 85). The vocational expert also testified that none of the light-work jobs – laminating clerk, garment sorter, inspector – required any reading. (*Id.*)

Amir posits that his lack of ability in speaking English, and the vocational expert's purported omission of discussing verbal communicative abilities, necessarily undercuts the ALJ's findings with respect to Amir's overall proficiency in the English language. But if we were to accept Amir's argument, then Amir would be precluded from nearly every occupation because they all involve some form of communication. That would mean that any claimant who is found able to perform sedentary work but cannot communicate in English is automatically disabled under step five. Such a policy is unsound. Accordingly, substantial evidence supports the ALJ's step-five determination, notwithstanding limits on Amir's ability to communicate in English.

### III.    CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment upholding the Commissioner's decision.

15