NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0064n.06

Case No. 19-3479

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

**FILED**
Jan 29, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LOUIS JOHN LIPANYE, JR., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

_____/

Before: MERRITT, CLAY, and GRIFFIN, Circuit Judges.

**MERRITT, Circuit Judge.** In this social security disability case, plaintiff Louis John Lipanye, Jr. appeals from a district court decision affirming the Commissioner's denial of benefits. Plaintiff specifically argues that the administrative law judge erred in determining plaintiff's residual functional capacity, and failed to adequately consider plaintiff's subjective complaints in determining whether plaintiff can continue to work with certain limitations. For the following reasons, we affirm the judgment of the district court affirming the Commissioner's decision.

**I.**

Plaintiff, born in 1954, filed for disability benefits in May 2015, alleging a disability onset date of October 3, 2014, when he was 60 years old. Plaintiff has an associate's degree in applied business. In his application for disability benefits, plaintiff reported that he has lived with one or

both of his parents his entire adult life, and that he was able to cook microwave meals, pay his own bills, vacuum, and care for his lawn. Plaintiff previously worked as a full-time accountant for 10 years, and prior to that he worked for a different company for seven years as a machine operator. He was laid off from both jobs due to lack of work. His most recent work was as an accounting clerk for his family's business, performing mostly data entry and accounting, and he also helped with maintenance tasks such as mowing the lawn.

Plaintiff's claimed disability is an obsessive-compulsive order that compels him to repeatedly check tasks already completed, such as making sure toilets are flushed, and lights are turned off, and, in relation to his job as an accounting clerk, rechecking numbers and letters previously entered. This repetitive behavior is recognized as an unspecified personality disorder related to perfectionistic and avoidant features. Plaintiff also suffers from early-stage cataracts. Plaintiff submitted no records of being previously treated by a mental health professional for his obsessive-compulsive disorder, so the medical evidence in the record consists of a consultative psychological examination in 2015 undertaken pursuant to his claim for disability benefits, and the opinions of two state-agency reviewing psychologists thereafter.

Pursuant to his claim for disability benefits, plaintiff underwent a psychological examination with Herschel Pickholtz, Ed. D., in July 2015. Plaintiff reported to Dr. Pickholtz that he was in "adjusted classes for slow learners" through ninth grade. He took regular, mainstream classes in high school, graduating with average grades. Plaintiff had no indications of anxiety. When asked to describe his symptoms, plaintiff said he repeatedly checked whether the lights are shut off, "toilets are flushed, and checks his work such as writing checks. . . . and checks his numbers and letters." Pickholtz Report at 4. He reported doing this for an hour per day. *Id.* Plaintiff also reported that he was not currently being treated for any medical or psychological

conditions, but was told he was at the beginning stages of cataracts. *Id*. at 3. Plaintiff reported that "once in a while" he received complaints about the pace of his work.

On examination, Dr. Pickholtz noted plaintiff was "a little bit slow in responding," and his motor activity was "somewhat slow," but he was compliant and "had very little difficulties in terms of understanding and responding to the questions and directives presented to him." *Id*. at 5. His speech was easily understood, logical, coherent, relevant, and goal-directed, but his rate of speech was "somewhat slow." *Id*. Dr. Pickholtz noted plaintiff's pace during the evaluation was below average, and his persistence was average. *Id.* at 4. Plaintiff's overall cognitive functioning was in "the low average range, at the upper end," and Dr. Pickholtz saw "no signs of any significant formal thought disorder." *Id*. at 5-6. His affect was appropriate, and mood was good. With a full-scale IQ of 89, Dr. Pickholtz estimated plaintiff's intelligence fell within the low-average range of functioning. *Id*. at 6. Dr. Pickholtz had plaintiff perform a number of psychometric tests and reported their results in his report. *Id*. at 7-9. In his summary, Dr. Pickholtz noted plaintiff reported symptoms "consistent with an obsessive/compulsive disorder," and concluded that plaintiff "probably has [a mild] unspecified neurocognitive disorder probably related to meningitis." *Id*. at 9. Dr. Pickholtz observed:

> The impact of his current psychiatric complaints and symptoms relative to work functioning comparable to the type of work he did in the past appears to be somewhat impaired but not preclusive of work and I think would improve with medications and treatment for OCD.

*Id.*

Dr. Pickholtz also included a "functional assessment" and a "global assessment of functioning determination" in his report. *Id*. at 10-11. There he opined that plaintiff's overall capacities to understand, remember, and carry out instructions "for work comparable to the type of work he did in the past appear[ed] to be slightly impaired at worst." *Id*. at 10. Dr. Pickholtz

concluded that plaintiff's abilities to relate to coworkers and supervisors "appear[ed] to be slightly impaired at worst," and plaintiff's ability to respond to work pressures comparable to past work were "somewhat impaired at worst and may improve with future treatment for his OCD." *Id.*

State agency consultants reviewed the record in August and October 2015. Their reports were in agreement with Dr. Pickholtz's diagnoses and observed limitations.

Plaintiff's claims were denied initially and upon reconsideration, and plaintiff then requested a hearing before an administrative law judge. A hearing was held on February 8, 2017. Plaintiff was represented by counsel. Testifying were plaintiff, plaintiff's brother-in-law Michael Urda, who had employed plaintiff as an accounting clerk in the family business, and the vocational expert. Considering an individual of plaintiff's age, education, and work experience, the vocational expert testified that plaintiff could not perform his past relevant work as an accountant or machine operator due to both mental and visual limitations. Hr'g Tr. at 29. The vocational expert testified, however, that such an individual could perform other jobs in the national economy such as cleaner, laborer, and production helper, all of which are classified as "unskilled." *Id.* at 30-31.

On April 4, 2017, the administrative law judge issued a written decision finding that plaintiff had severe impairments of cataracts, anxiety disorder, personality disorder, and organic brain disorder, but none of these impairments—individually or in combination—met or medically equaled the severity of a listed impairment. ALJ Decision at 3-4. The administrative law judge found plaintiff retained the residual functional capacity

> to perform a full range of work at all exertional levels but with nonexertional limitations. [He] has limited far and near acuity, and his work should no more than occasionally require depth perception. He must avoid concentrated exposure to hazards. [He] retains the sustained concentration, persistence, and pace necessary for simple work of a routine and repetitive type. He is limited to occasional[,] brief[,] and superficial contact with co-workers.

*Id*. at 5.  Based on this residual functional capacity, the judge found plaintiff was unable to perform any past relevant work.  However, considering plaintiff's age, education, work experience, and residual functional capacity, he found there were jobs existing in significant numbers in the national economy.  Accordingly, the administrative law judge concluded that plaintiff was not disabled.  *Id*. at 8.

The Appeals Council denied plaintiff's request for review, making the hearing decision the final decision of the Commissioner. Plaintiff timely filed a complaint in federal court on February 2, 2018.  The case was referred to a magistrate judge for preparation of a Report and Recommendation.  The magistrate judge recommended that the district court affirm the Commissioner's decision.  *Lipanye v. Comm'r of Soc. Sec.*, No. 1:18-cv-273, 2019 WL 1261416 (N.D. Ohio Jan. 29, 2019).  Over plaintiff's objections, the district court adopted the Report and Recommendation and affirmed the Commissioner's decision.  *Lipanye v. Comm'r of Soc. Sec.*, No. 1:18-cv-273, 2019 WL 1396921 (N.D. Ohio Mar. 28, 2019).  This appeal followed.

## II.

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a).  The Commissioner follows the familiar five-step evaluation process to determine if a claimant is disabled under the agency's regulations.[1]  20 C.F.R. § 404.1520.  Under this five-step sequential

---

[1] 1. Was claimant engaged in a substantial gainful activity?

analysis, the claimant has the burden of proof in steps one through four, but the burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Residual functional capacity is the "most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The administrative law judge considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant can perform other work. Only if a claimant satisfies each element of the analysis is he determined to be disabled. *Id*. § 404.1520(b)-(f).

Our review is limited to determining whether the Commissioner's decision is supported by "substantial evidence" and was made pursuant to the proper legal standards. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation and brackets omitted). "[M]ore than a mere scintilla" of evidence means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted).

### III.

On appeal to this court, plaintiff raises the same three objections to the administrative law judge's decision that he raised before the district court, and they all relate to his main complaint:

---

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

that the administrative law judge erred in finding him capable of performing any work because his obsessive-compulsive disorder prevents him from sustaining full-time employment by anyone who is not a family member. First, he contends the administrative law judge failed to include in the residual functional capacity assessment that plaintiff would be "off-task" for more than 10% of the workday due to his obsessive-compulsive disorder. Second, he contends that the administrative law judge failed to properly consider that his past work was in a family-supported work environment. Third, he argues the administrative law judge failed properly to assess credibility relating to plaintiff's subjective symptoms. The Commissioner responds that the administrative law judge did not err, the decision is supported by substantial evidence, and it should be affirmed.

## A. **"Off-Task" Limitation**

Plaintiff first contends that in assessing his residual functional capacity, the administrative law judge erroneously failed to include a limitation that plaintiff would be off-task for more than 10% of the workday. Plaintiff is correct that the vocational expert testified that such a limitation would be work preclusive. Hr'g Tr. at 32. However, the answer came in response to a question by plaintiff's counsel, with a follow-up clarification by the administrative law judge:

> ALJ: What is the standard that you would think would apply?
> Have to be on-task, at least, how much?
> VE: 10% or less task -- so, you need to be on-task--
> ALJ: All right. So, if they're off-task 10% or more--
> VE: Yes.
> ALJ: -- it's not going to work?
> VE: That's right.

*Id*. The administrative law judge properly asked a hypothetical question about the residual functional capacity and ability to engage in work of a *hypothetical* plaintiff who was off-task 10% of the workday. *See Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019) (ALJ may pose questions that differ from those ultimately adopted and this does not mean that the

vocational expert's answer about the hypothetical individual binds the ALJ). By posing the question, the administrative law judge did not make a finding or bind himself to a finding that plaintiff was off-task at least 10% of the workday. Nothing in the medical record would support inclusion of such a limitation. Dr. Pickholtz, the examining psychologist, recognized plaintiff's obsessive-compulsive disorder, and opined that plaintiff's ability to maintain attention and concentration for one-to three-step tasks "for work comparable to the type of work he did in the past" was "somewhat impaired at worst." Pickholtz Report at 10.

Plaintiff also points to a statement contained in both of the reviewing state-agency disability determinations that found that plaintiff credibly reported "obsessive and compulsive problems with regards to numbers and letter[s] and spend[s] over an hour daily checking these things." Plaintiff argues that "an hour daily" amounts to more than 10% of an eight-hour workday, and because these statements were deemed credible, such a limitation should have been included in assessing plaintiff's residual functional capacity. Although the state-agency consultants found plaintiff credible, nowhere did they opine that his limitations were work preclusive. Both state-agency reviewers determined that plaintiff was somewhat slow to respond, but he was capable of performing "simple and more complex tasks that do not require much speed." The administrative law judge accounted for such limitations in assessing plaintiff's residual functional capacity by stating that plaintiff "retains the sustained concentration, persistence, and pace necessary for simple work of a routine and repetitive type." ALJ Decision at 5. An administrative law judge is only required to include in the residual functional capacity those limitations he finds credible and supported by the record. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

B. **Past Work**

Plaintiff next contends that the administrative law judge failed to consider that plaintiff's past work was performed with significant accommodation from his family, referred to as "supported employment" in the Social Security regulations. Plaintiff points to testimony from his brother-in-law, Michael Urda, who testified that he employed plaintiff as a "favor" to the family and that the same work could have been accomplished by a part-time employee.[2] Plaintiff's reliance on arguments relating to his past work as an accountant and machine operator, both of which are classified as "skilled" work, is not material to the administrative law judge's residual functional capacity assessment. The administrative law judge found plaintiff could not perform his past skilled work as an accountant or machine operator, and found, based on the vocational expert's testimony, that plaintiff was not disabled because he could perform less demanding "other" work despite his limitations. Once the administrative law judge found that plaintiff could not perform his past work, whether that past work was "supported employment" under the regulations became immaterial.

C. **Credibility**

Contrary to plaintiff's argument that the administrative law judge did not find his subjective complaints "credible,"[3] the administrative law judge's decision included acknowledgment of plaintiff's subjective complaints as part of assessing plaintiff's residual functional capacity. ALJ Decision at 6. It is for the administrative law judge, not the reviewing court, to judge the

---

[2] The administrative law judge's decision reflects that he found plaintiff less limited than his family opined, consistent with the medical opinions in the record. ALJ Decision at 3, 6 (discussing the opinions of Dr. Pickholtz and the state-agency consultants).

[3] The current term used for evaluating subjective complaints is "consistency" instead of "credibility." *See Dooley v. Comm'r of Soc. Sec*., 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (Social Security regulation 16-3p removed the term "credibility" only to "clarify that subjective symptom evaluation is not an examination of an individual's character." (quoting Social Security Regulation 16-3p)).

consistency of a claimant's statements. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007); *see also Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713-14 (6th Cir. 2012) (The evaluation of plaintiff's alleged symptoms rests with the administrative law judge, and "[a]s long as the [administrative law judge] cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess."). Substantial evidence supported the administrative law judge's decision, and plaintiff's conclusion to the contrary based on his own subjective complaints does not meet his burden. All the psychologists who opined on plaintiff's obsessive-compulsive disorder acknowledged the disorder, but found that plaintiff nonetheless retained a significant ability to work despite his condition.

Dr. Pickholtz, the only psychologist to actually examine plaintiff, diagnosed plaintiff with some mental limitations, but found plaintiff was only "slightly impaired at worst" in carrying out instructions or responding to supervision and coworkers, and "somewhat impaired at worst" in maintaining attention, concentration, persistence, and pace, and responding to work pressures.[4] Pickholtz Report at 10. Notably, Dr. Pickholtz also offered such restrictions in comparison to plaintiff's past work as an accountant and machine operator, which was more demanding than the work for which the administrative law judge found plaintiff capable. But, as the administrative law judge found that plaintiff could *not* perform his prior skilled work as an accountant or machine operator, plaintiff's focus on opinions about his ability to do skilled work is not material to the administrative law judge's conclusion that plaintiff can do simple, unskilled work. The administrative law judge's finding that plaintiff's "statements concerning the intensity, persistence

---

[4] It must be reiterated that the medical evidence in this case is sparse as plaintiff was not under the care of any treating physicians during the time period in question. The administrative law judge may consider whether treatment has been sought, and whether treatment might alleviate some of the symptoms. Indeed, Dr. Pickholtz indicated that plaintiff's obsessive-compulsive disorder might improve with treatment and medication.

and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record," ALJ Decision at 6, is supported by substantial evidence.

Because substantial evidence supports the decision of the administrative law judge, we affirm the judgment of the district court upholding the Commissioner's decision.